FILED
2012 Jan-30  AM 11:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, et al., | ] |
| | ] |
| Plaintiffs, | ] |
| | ] |
| vs. | ]    6:10-cv-02626-LSC |
| | ] |
| WALKER COUNTY BOARD OF EDUCATION, | ] |
| | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration a motion for summary judgment, which was filed by the Defendant, Walker County Board of Education ("WCBOE" or the "Board"), on October 3, 2011.  (Doc. 42.)  Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC") filed suit against WCBOE on September 28, 2010, for alleged violation of the Age Discrimination in Employment Act  of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.*  Specifically, EEOC claimed the Board failed to hire Maurice Thomas ("Thomas") because of his age.  On February 1, 2011, the Court granted Thomas's motion to intervene as party plaintiff.  (Doc. 18.)  On May

10, 2011, Thomas filed a complaint against WCBOE for breach of contract and retaliation under the Alabama Age Discrimination in Employment Act ("AADEA"), Ala. Code § 25-1-20, *et seq.*  (Doc. 31.)  Defendant's motion has been briefed by all parties and is now ripe for review.  Upon full consideration, it is the opinion of this Court that the motion for summary judgment is due to be granted with regard to Thomas's claims for breach of contract and retaliation, but denied with regard to EEOC's ADEA claim.

II.    Facts.[1]

Maurice Thomas began his employment with WCBOE as a substitute physical education teacher in October 2000.  In 2001, the Board hired Thomas as a full-time physical education teacher at Oakman High School.  Thomas is a certified teacher with tenure in the Walker County School System.  He has been continuously employed with the Board as a physical education teacher since 2001 and served as an Assistant Junior Varsity Basketball Coach, Head Junior High Volleyball Coach, and Assistant Softball Coach.

---

[1]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

On May 30, 2008, WCBOE advertised four vacant positions at Oakman High School. One of those positions was announcement number P1816: "PE Teacher & Boys Varsity Basketball Coach." The listing read:

> Must be certified and HQ[2] in physical education. Must coach boys varsity basketball with other coaching duties to be determined during the interview. Additional activities, duties, committees, clubs, sponsorships, etc., may be assigned by the principal.
> Annual Salary Range: $39,670.00 - $64,350.00

(Doc. 48-1 at 2.) The posting also states: "Applicants should apply only for those positions for which they meet certification requirements. Applications must be fully completed. All prospective teachers are required to furnish proof of Highly Qualified status and transcripts from colleges attended." (*Id.*) The Board received several applications, including one from Thomas and one from Jeffrey Blake Laney ("Laney"). At the time of application, Thomas was fifty-seven (57) years old; Laney was twenty-five years old.

Joel Hagood ("Hagood") was the Oakman High School principal in 2008. During the season prior to the posting of P1816, the basketball team at Oakman High School won only two or three games and lost about twenty. In Hagood's opinion, the

---

[2]The evidence shows that "HQ" stands for "highly qualified." "Highly qualified" was included in the listing for P1816 because uncertified teachers are allowed to teach in Alabama public schools and WCBOE wanted a certified teacher. (Slaughter Dep. at 60-61.)

students were losing interest in playing basketball, and he felt pressure to find a basketball coach "that would have the skills to revive" the basketball program. (Hagood Dep. I at 76-77, 131.) He reached out to the Clinical Placement Director at the University of Alabama to ask if they "had anyone graduating in physical education that they might recommend." (*Id*. at 75.) Hagood was given Laney's name. Hagood then took the initiative to call the school where Laney did his clinical work to discuss Laney with the head varsity basketball coach. Hagood also called Laney's former coach in high school. In Hagood's words, he "did a thorough background check of Mr. Laney to find out what type of person [he] was . . . getting." (*Id*. at 76.) These contacts occurred prior to any interview of the candidates. (*Id*. at 80.)

Hagood interviewed Laney first. Laney had no teaching experience, was not yet certified to teach physical education, and was not "highly qualified" to teach physical education, as required by the listing for P1816. However, Hagood was impressed with Laney's knowledge of basketball. (Hagood Dep. II at 31-33.) When Thomas interviewed after Laney, Hagood did not seek out or review Thomas's resume. (*Id*. at 45.) Hagood told Thomas that he would not be getting the job. (*Id*.)

Hagood recommended to the Superintendent, Dr. Vonda Beaty, that Laney be hired for P1816. However, Dr. Beaty reviewed the candidates' experience and

qualifications, in keeping with her understanding of WCBOE policies, and determined that she had to recommend Thomas because of his seniority in the system.  (Beaty Dep. at 45-46.)  She also noted that Thomas did not have a poor teaching record or inferior qualifications to support hiring Laney instead.  (*Id.* at 37.)  On June 19, 2008, the Board accepted Dr. Beaty's recommendation and voted to award P1816 to Thomas.  Thomas was notified of his hiring by letter on June 21, 2008.

When Hagood learned that Thomas had been hired as the physical education teacher and basketball coach for Oakman High School, he was very upset.  (Hagood Dep. II at 57.)  He decided to get the Oakman High School Trustees involved.  He drafted a letter to the Board, which he signed along with the trustees, that asked WCBOE to rescind Thomas's hire because "[t]o our knowledge he has never coached basketball, and certainly has not at the varsity level."  (Doc. 49-1 at 20.)  When Hagood was informed that he could not sign the letter, he drafted a second letter for the trustees' signature.  This letter read:

> The Oakman School Community has concerns and problems accepting the hiring of Mr. Maurice Thomas which occurred at the Walker County Board of Education meeting on Thursday June 19, 2008.
> The reason for the concerns of Mr. Thomas' appointment is lack of qualifications for the position.  He has never coached basketball at the varsity level.  Our basketball team has suffered through several years of disappointment after disappointment.  We set out to hire a coach with the knowledge and skills to revive our suffering program.  We feel we

have found a *young, energetic coach* that can start this revival. He has two years of experience coaching the freshman team at 6-A Northridge High School.

The trustees of Oakman High School, by unanimous consent based on Alabama Code section 16-10-4, refuses [sic] to accept the appointment of Mr. Maurice Thomas as P.E. and head basketball coach. In no way is this request a personal attack against the above mentioned applicant. We simply feel that he is not the most qualified candidate for this position. The recommendation that was presented to the superintendent was based on precedent that has been established in our system with positions that have coaching attachments. It was also made after the proper interview process, and with the consideration of what was best for the Oakman School Community.

(Doc. 48-2 at 2 (emphasis added).) Hagood delivered the second letter to Dr. Beaty, who presented it to the Board. In keeping with their understanding of Alabama Code § 16-10-4, the Board rescinded Thomas's hire. Dr. Beaty then recommended Laney for the P1816 position, and WCBOE voted to approve the recommendation.

III.   Standard.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[3] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and

---

[3]Although Fed. R. Civ. P. 56 was amended on December 1, 2010, "the standard for granting summary judgment remains unchanged." Fed. R. Civ. P. 56 advisory committee's note (2010 Amendments).

identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56 "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted); *see also* Fed. R. Civ. P. 56(c). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp.*, 281 F.3d at 1224 (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.    Analysis.

    A.    ADEA Claim.

EEOC contends that when the Board rescinded its decision to hire fifty-seven year old Thomas in favor of hiring the "young, energetic" Laney, it discriminated against Thomas in violation of ADEA.  Under ADEA, it is "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (quoting 29 U.S.C. § 623(a)(1)).  "When a plaintiff alleges disparate treatment, 'liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision.'" *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 (2000) (quoting *Hazen Paper Co. v. Biggens*, 507 U.S. 604 (1993)).  "That is, the plaintiff's age must have 'actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome.'" *Id.*  WCBOE has moved for summary judgment on EEOC's claim, arguing that there is no evidence the Board rescinded Thomas's hiring because of age discrimination.

1.    Prima Facie Case.

The Eleventh Circuit Court of Appeals, "as well as other courts of appeals, uses the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981), to evaluate ADEA claims that are based upon circumstantial evidence of discrimination."[4]  *Chapman*, 229 F.3d at 1024.  Under the *McDonnell Douglas* framework, "the plaintiff has the initial burden of establishing a prima facie case of discrimination." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir. 1997).  "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee."  *Id*. at 1528 (quoting *Burdine*, 450 U.S. at 254).

In order to establish a prima facie case of age discrimination, a plaintiff must show: "(1) that [he] was a member of the protected group of persons between the ages

---

[4]EEOC contends that the words in the Trustees' letter: "We feel we have found a young, energetic coach that can start this revival" constitute direct evidence of age discrimination.  (Doc. 48-2 at 2.)  The Court disagrees.  Direct evidence of discrimination is "evidence, that, if believed, proves [the] existence of [a] fact without inference or presumption."  *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (quoting *Burrell v. Bd. of Trs. of Ga. Military Coll.*, 125 F.3d 1390, 1393 (11th Cir. 1997)).  "[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination."  *Id*. (quotations omitted).  "If the alleged statement suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence."  *Id*.  The statement in this case infers discriminatory motive; alone, it does not prove discriminatory motive.  The statement constitutes circumstantial evidence.

of forty and seventy; (2) that [he] was subject to adverse employment action; (3) that a substantially younger person filled the position that [he] sought or from which [he] was discharged; and (4) that [he] was qualified to do the job for which [he] was rejected." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999). It is undisputed that Thomas meets prongs one and three. The Board disputes that EEOC has shown evidence that Thomas was subject to adverse employment action and/or was qualified for the position of P1816. (Doc. 43 at 8.)

a.      Adverse Employment Action.

It is undisputed that Thomas was hired for the P1816 job and his hiring was then rescinded by the Board. WCBOE contends that the rescission does not constitute an adverse employment action because his hiring was a "purely lateral transfer" that was not a "serious and material change in the terms, conditions or privileges" of Thomas's employment. (Doc. 43 at 9 (quoting *Butler v. Ala. Dep't of Transp.*, 53 F.3d 1209, 1215 (11th Cir. 2008).) As support, WCBOE argues that Thomas was denied "essentially the same job in another location with no effect on his salary and benefits." (*Id.*) The Board's assertion fails.

It is undisputed that Thomas never worked as a head varsity basketball coach. In fact, Hagood says that's the reason Thomas was not qualified for the P1816

position.  Hagood also testified that the position of physical education teacher and boys varsity basketball coach at Oakman High School would have involved a host of coaching duties and privileges different from those held by Thomas at the time of his application and hire– including the responsibility of taking over the entire basketball program.  Being hired as a head varsity basketball coach at Oakman High School would have been, in effect, a promotion in responsibilities and privilege, regardless of whether Thomas received a salary increase.  The Court has no doubt that, viewing the facts in the light most favorable to the plaintiff, a reasonable person would view Thomas's denial of that position as an adverse employment action.  *See Doe v. Dekalb County School Dist.*, 145 F.3d 1441, 1452 (11th Cir. 1998) (finding that job actions must be viewed from the perspective of a reasonable person and stating that "transfers that result in lesser pay, *responsibilities, or prestige* will still be "adverse.'") (emphasis added).

b.      Qualified to do the Job.

In seeming contradiction to its argument that Thomas was denied the "same job" he already held, WCBOE also maintains that Thomas was not qualified for the P1816 position because he had "insufficient basketball coaching experience."  (Doc. 43 at 10.)  Specifically, Thomas's "only basketball coaching experience was one

season as an assistant coach for eighth grade boys basketball." (*Id*. at 9.)  The job listing for P1816 does not state that any coaching experience is required.  Moreover, the Board Superintendent, Dr. Beaty, reviewed the candidates' experience and qualifications and determined that Thomas met the job requirements for the position. There is sufficient evidence in the record for a reasonable jury to conclude that Thomas was qualified for the position he was awarded and then denied.  Accordingly, the Court turns to the Board's proffered reason(s) for its employment decision.

> 2.      Defendant's Reasons for Failure to Hire.

"The effect of the presumption of discrimination created by establishment of the prima facie case is to shift to the employer the burden of producing legitimate, nondiscriminatory reasons for the challenged employment action." *Combs*, 106 F.3d at 1528 (citing *McDonnell Douglas*, 411 U.S. at 802; *Burdine*, 450 U.S. at 254).  "To satisfy that burden of production, 'the defendant need not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" *Id*. (quoting *Burdine*, 450 U.S. at 254-55).

Defendant proffers a number of reasons for its employment decision: (1) Thomas had little coaching experience in basketball; (2) Thomas had a history of

players quitting his teams; (3) Thomas lacked enthusiasm and commitment to sports; and (4) the Board had no discriminatory motive because it had no choice but to accept the Trustees' rejection of Thomas under Alabama Code § 16-10-4 (1975).  (Doc. 43 at 11-14.)  For the purposes of summary judgment, the Court accepts that these are "legitimate, nondiscriminatory" reasons for the Board's failure to hire Thomas for the P1816 position.

> 3.    Pretext.

"If a defendant carries its burden of producing legitimate, nondiscriminatory reasons for its decision, the presumption of discrimination created by the *McDonnell Douglas* framework 'drops from the case,' and 'the factual inquiry proceeds to a new level of specificity.'" *Combs*, 106 F.3d at 1528 (quoting *Burdine*, 450 U.S. at 255 n.10). EEOC then "has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Id.*

The Court will begin with the Board's claim that it had no discriminatory motive because it had no choice but to accept the Trustees' rejection of Thomas under Alabama Code § 16-10-4.  The relevant code provision says:

> In the event a teacher, not already employed in a school, is assigned to such school, the county superintendent of education shall give to the trustees of said school notice in writing of such assignment, and the trustees of said school, within 10 days from the date of the receipt of the superintendent's notice of assignment, may by unanimous consent refuse to accept the assignment of such teacher to their school upon written notification to the county superintendent of education setting out the reason for such refusal; and it is hereby made the duty of the county superintendent of education to assign another teacher to such school.

Ala. Code § 16-10-4 (1975).  While WCBOE's lawyer testified that the Board had to accept the Trustees' rejection under this code provision, there is no evidence in the record that the Board members themselves believed they were bound by statute to act the way they did.  *See, e.g.*, *IMPACT v. Firestone*, 893 F.2d 1189, 1194 (11th Cir. 1990) ("there must be evidence that the asserted reasons for discharge were actually relied on") (quotations omitted). Board member Brenda Drummond testified that the Trustees' letter was submitted only for the Board members to "consider," and she would not have deferred to the Trustees if it was evident that their decision was based on race.  (Drummond Dep. at 24, 35-36.)  The then-chairman of the Board testified that WCBOE was *not* obligated to accept the trustees' recommendation. (Daniel Dep. at 48.)  In fact, the Board members' testimony is consistent that they voted the way they did because "the wishes of the trustees from any school normally [were] honored."  (*Id.* at 30.)

The Board, however, cannot insulate itself from liability by rubberstamping a recommendation made with discriminatory animus.  In this case, there is sufficient evidence to convince a reasonable jury that *if* Hagood acted with anti-age animus in selecting Laney and pursuing the Trustees to have them sign a letter rejecting Thomas, then that animus can be imputed to the Trustees and then the Board. Trustee Jimmy Woods testified that he signed the letter requesting the rejection of Thomas solely because of Hagood's recommendation and without doing any investigation or inquiry of his own.  In Mr. Woods' words: "I know Joel Hagood, if this was the thing to do, he would have brought it up and said, 'This is what we need to do,' and I went off his recommendation."  (Woods Dep. at 19.)  Woods continues, "[E]verybody was in on whatever Joel recommended.  He is, in our opinion, a quality man that knows the pulse of the school and what's best for the school and we trusted his opinion and that's what we all went off of."  (*Id*. at 20.)  "[T]his was an opportunity to get a coach with some experience and that the superintendent was sending him a coach that didn't have experience and he asked us, he said, 'Y'all as a group, can rescind this, if you will,' and that's the only time he's ever called on us to do anything; so we did."  (*Id*. at 44.)  Trustee Harold Wade testified that he "really

didn't read the letter" Hagood gave him to sign; he "went based—strictly based on the principal's recommendation." (Wade Dep. at 17, 20.)

There is sufficient evidence to convince a reasonable jury that the Oakman High School Trustees rubberstamped Hagood's plea and recommendation to reject Thomas. WCBOE then rubberstamped the Trustees' recommendation. There is also sufficient evidence to convince a reasonable jury that the Board members understood that the Trustees acted at the direction and will of Hagood. (*See, e.g.*, Raines Dep. 13-14, 44-45; Daniel Dep. at 32-33.) When a decisionmaker does not conduct its own investigation and only "rubberstamps" the recommendations of those with discriminatory animus, the causal link remains intact. *See Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1249 (11th Cir. 1998) (defining "cat's paw" causation); *see also Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1195 (2011) (Alito, J., joined by Thomas, J., concurring) ("Where the officer with formal decisionmaking authority merely rubberstamps the recommendation of others, the employer, I would hold, has actually delegated the decisionmaking responsibility to those whose recommendation is rubberstamped.")

The Court must address the question, then: is there sufficient evidence to convince a jury that Hagood acted with anti-age animus? The Court answers in the

affirmative.  The Board proffers three legitimate, nondiscriminatory reasons for Hagood's decision to reject Thomas and hire Laney for P1816:  (1) Thomas had little coaching experience in basketball; (2) Thomas had a history of players quitting his teams; (3) Thomas lacked enthusiasm and commitment to sports.

First, there is no evidence that Hagood relied on the last two reasons in making his decision.  *See, e.g.*, *IMPACT*, 893 F.2d at 1194.  Defendant cites to Thomas's deposition to argue that he lacked enthusiasm.  (Doc. 43 at 13.)  Hagood never testified that he rejected Thomas because of a lack of commitment or enthusiasm. Moreover, while Hagood mentioned in his deposition that he "had knowledge" that Thomas had teams that folded and had issues with players quitting (Hagood Dep. II at 46), he does not testify when he obtained that knowledge or that the knowledge played any roll in his decision to hire Laney.

Instead, Hagood repeatedly testified that Thomas "had no knowledge or no prior experience . . . of coaching basketball" (Hagood Dep. I at 39); that Thomas was not the "best candidate" (Hagood Dep. II at 57); and Laney had "more knowledge" about the game of basketball and coaching basketball (*Id*. at 31-32).  Yet, Hagood also admitted he may have known that Thomas coached basketball at the junior high level (Hagood Dep. I at 39), and he knew Thomas had coaching experience (*Id*. at 57).

While Hagood pro-actively sought information on Laney's background, Hagood did not even review Thomas's resume to determine whether he had coached basketball. (Hagood Dep. II at 45.)  Hagood also wrote in the Trustees' letter that Thomas lacked qualifications for the P1816 position because he "never coached basketball at the varsity level."  (Doc. 48-2 at 2.)  However, Hagood conceded that Laney also never coached basketball at the varsity level.  (Hagood Dep. I at 74, 94.)  A reasonable jury could conclude from these inconsistencies in the record that Hagood is "dissembling to cover up a discriminatory purpose."  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000); *see also Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 525 (11th Cir. 1994) ( "[P]roof that a defendant's articulated reasons are false is not proof of intentional discrimination; it is merely evidence of intentional discrimination. However, evidence of intentional discrimination is all a plaintiff needs to defeat a motion for summary judgment. That evidence must be sufficient to create a genuine factual issue with respect to the truthfulness of the defendant's proffered explanation.") (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510-511 (1993). Given evidence in the record that Hagood sought after and selected a young man fresh out of college for the P1816 position, ignored the fact that Laney was not yet certified to teach, and informed both the Trustees and the Board in his drafted letter that he

found a "young, energetic coach" to "revive" his basketball program (Doc. 48-2 at 2), a reasonable jury may infer that Hagood rejected Thomas and selected Laney because of age-based discrimination.  For these reasons, summary judgment will be denied with regard to EEOC's ADEA claim.

B.      State Law Claims.

Thomas contends that WCBOE is liable for retaliation under AADEA and for breach of contract.  The Board counters that it is entitled to state and Eleventh Amendment immunity from all state law claims.

"County boards of education are not agencies of the counties, but local agencies of the state, charged by the legislature with the task of supervising public education within the counties." *Ex parte Hale County Bd. of Educ.*, 14 So. 3d 844, 848 (Ala. 2009) (quoting *Board of School Com'rs of Mobile County v. Architects Group, Inc.*, 752 So. 2d 489, 491 (Ala. 1999)).  "Under Ala. Const. of 1901, § 14, the State of Alabama has absolute immunity from lawsuits. This absolute immunity extends to arms or agencies of the state." *Id.* (quoting *Ex parte Tuscaloosa County*, 796 So. 2d 1100, 1103 (Ala. 2000)).  "For purposes of § 14 immunity, county boards of education are considered agencies of the State." *Id.* (quoting *Ex parte Jackson County Bd. of Educ.*, 4 So. 3d 1099, 1102-03 (Ala. 2008)).  "[N]either the Alabama Legislature nor [the

Alabama Supreme] Court has the power to waive the State's immunity from suit." *Ex parte Cranman*, 792 So. 2d 392, 399 (Ala. 2000).

Thomas does not address Defendant's contention that absolute state immunity bars his AADEA claim.  He does argue, however, that his contract claim is allowable under *Belcher v. Jefferson County Bd. of Ed.*, 474 So. 2d 1063, 1068 (Ala. 1985), and *Palmer v. Perry County Bd. of Ed.*, 496 So. 2d 2 (Ala. 1986).  Thomas maintains that *Belcher* and *Palmer* held that § 14 immunity did not apply to breach of contract suits, and neither case was explicitly overruled by the Alabama Supreme Court's 2009 decision in *Ex parte Hale*: "Because county boards of education are local agencies of the State, they are clothed in constitutional immunity from suit, and we overrule *Sims* [*v. Etowah County Bd. of Ed.*, 337 So. 2d 1310 (Ala. 1976)]and *Kimmons*, [*v. Jefferson County Bd. of Ed.,* 204 Ala. 384, 85 So. 774 (Ala. 1920),] ('The county board of education is given the right to sue, and the implied right to be sued . . . .'), to the extent that they and their progeny impose an implied "right to be sued" on county boards of education."  14 So. 2d at 848-49.  *Belcher* and *Palmer*, however, are part of the "progeny" referenced in *Ex parte Hale*.  *See Belcher*, 474 So. 2d at 1065 (citing Kimmons); *Palmer*, 496 So. 2d at 4 (citing *Sims* and *Kimmons*).  Both cases were

overruled to the extent they held a plaintiff has an ability to sue a county board of education for breach of contract.

Alabama law leaves little remedy to the employees of state agencies. Thomas's state law claims are barred by Article 1, § 14 of the Alabama Constitution. Because Thomas's claims are barred by the state constitution, it is unnecessary to address Defendant's argument that it is entitled to Eleventh Amendment immunity.

V.     Conclusion.

For the reasons stated above, Defendant's motion for summary judgment will be granted with regard to Thomas's state law claims, but denied with regard to EEOC's ADEA claim. A separate order will be entered.

Done this 30th day of January 2012.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297